**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ROGERNICK HARDING**                                      **CIVIL ACTION**

**VERSUS**                                                          **No. 24-2814**

**C-DIVE, LLC, ET AL.**                                        **SECTION I**

## ORDER AND REASONS

Before the Court is defendant Transcontinental Gas Pipe Line Company, LLC's ("Transco") motion[1] for partial summary judgment with respect to the body of substantive law governing plaintiff Rogernick Harding's ("Harding") tort claim against Transco. Transco argues that Alabama law governs Harding's claim against Transco as surrogate federal law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). Harding filed a response[2] in opposition to the motion, and Transco replied.[3] The other named defendants in this matter, C-Dive, LLC ("C-Dive") and Sea Support Services L.L.C. ("Sea Support"), did not respond to Transco's motion. For the following reasons, the Court grants the motion.[4]

---

[1] R. Doc. No. 74.

[2] R. Doc. No. 80.

[3] R. Doc. No. 81.

[4] This order and reasons is limited to the substantive law governing Harding's claim against Transco. It does not encompass any claims against C-Dive or Sea Support. C-Dive and Sea Support did not join Transco's motion and it is possible for a plaintiff to simultaneously bring claims governed by state law pursuant to OCSLA and maritime law. *See, e.g.*, *Solet v. CNG Producing Co.*, 908 F. Supp. 375, 378 (E.D. La. 1995) (Feldman, J.) (reasoning that the plaintiff's claims against the platform operator were governed by OCSLA, while his claims against the vessel parties were governed by general maritime law); *Henson v. Odyssea Vessels, Inc.*, No. 07-613, 2008 WL 544184, at *4 (E.D. La. Feb. 25, 2008) (Barbier, J.) (finding that the plaintiff's claims against the vessel owner were governed by maritime law, while his claims

## I.    BACKGROUND

On or about October 17, 2023, Transco was "conducting a pipeline abandonment project" on the Outer Continental Shelf ("OCS"), between Main Pass 259 and Main Pass 261 in the Gulf.[5]

Harding's employer, Legends PPS ("Legends"), was subcontracted to work on the project through C-Dive, while C-Dive was contracted through Transco. On October 17, 2023, Harding, two coworkers, and a C-Dive representative were transferring from a vessel, the MELINDA B. ADAMS, to the platform "to perform a leak test on . . . high pressure hoses," as a part of their work on the pipeline abandonment project.[6] According to Harding, at the time of the transfer, defendant C-Dive was the "owner pro hac vice and/or manager," and operator of the MELINDA B. ADAMS (the "vessel"). However, the vessel is wholly owned by defendant Sea Support Services, LLC ("Sea Support").[7]

The intention was for a crane attached to the Main Pass 261A platform to lift a personnel basket, containing Harding and his team, from the deck of the vessel to the platform. However, there were allegedly two unsuccessful transfer attempts, with the second resulting in Harding falling from the basket. As described in the Legends incident report, during the first attempt, the personnel basket swung into the

---

against the crane operator were governed by OCSLA). However, "[b]ecause Congress has delineated among admiralty, federal law and adjacent state law in OCSLA, the parties may not avoid, whether voluntarily or inadvertently, the statutory choice." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 217 (5th Cir.), *order clarified on reh'g*, 829 F.3d 770 (5th Cir. 2016).

[5] R. Doc. No. 80-1 ¶ 1–3.

[6] R. Doc. No. 80-1 ¶ 3; R. Doc. No. 80-5, at 2.

[7] R. Doc. No. 53 ¶¶ 2–3, 5.

separation tank, the basket was lowered back to the vessel's deck, and Harding and the other occupants exited the basket.[8] On the second attempt, "[t]he personnel basket swung into the handrail on the stern of the vessel next to the jump deck.[9] The basket was briefly hung up on the handrail and when it [was] freed[,] it swung back over the separation tank," causing Harding to fall out of the basket, "against the separation tank" and "then onto the deck of the boat."[10] Harding was approximately six to eight feet off the deck of the vessel when he fell.[11] He reported hitting his right shoulder on the separation tank and then landing on his pelvis.[12]

According to Harding, negligence on the part of the deckhand tending to the personnel basket tagline and the captain of the vessel were significant contributing factors to the incident.[13]

## II.    STANDARD OF LAW

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary

---

[8] R. Doc. No. 80-5, at 3.
[9] *Id.*
[10] *Id.*
[11] R. Doc. No. 80-1 ¶ 9.
[12] R. Doc. No. 80-5, at 3.
[13] R. Doc. No. 80, at 10.

judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (citations omitted). Rather, a genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255. If the nonmovant fails to meet its burden of showing a genuine dispute for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

### III.    ANALYSIS

To determine whether the OCSLA requires the application of state law as surrogate federal law to a plaintiff's claim, courts in the Fifth Circuit utilize a three-part test: (1) the claim must arise from an OCSLA situs; (2) maritime law must not apply of its own force; and (3) the applicable state law must not be inconsistent with federal law. *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213–14 (5th Cir. 2013); *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

As the Court explains below, the first two factors are met. Additionally, Harding does not dispute that the surrogate federal law pursuant to OCSLA, i.e., the law of the adjacent state, is Alabama law. Nor does he argue that Alabama law is inconsistent with federal law. Thus, Alabama law will govern Harding's tort claim against Transco.

### A.    <u>Harding's claim against Transco arose from an OCSLA situs.</u>

OCSLA's reach is broad and applies to claims "arising out of or in connection with any operation conducted on the Outer Continental Shelf which involves . . . production of . . . minerals." *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (quoting 43 U.S.C. § 1349(b)(1)). As this Court explained in *Hicks v. BP Exploration & Production, Inc.*, 308 F. Supp. 3d 878, 884–85 (E.D. La. 2018), Courts in the Fifth Circuit employ a straightforward "but-for" test to determine if a claim arises from an OCSLA situs:  "(1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the

OCS; and (3) the plaintiff's injury would not have occurred but for his employment."

*Barker*, 713 F.3d at 213.

The Fifth Circuit's analysis in *Recar* is as instructive here as it was in *Hicks*. In *Recar*, the Court found, under similar circumstances, that a plaintiff's claim arose from an OCLSA situs:

> Recar and his crew had been engaged for some time in repairing and painting platforms that CNG Producing Company (CNG) owned on the Outer Continental Shelf off the coast of Louisiana in the Gulf of Mexico. CNG had hired the M/V GRADY FAGAN to transport the crew from platform to platform, and Recar and his crew ate and slept aboard this vessel. Additionally, Recar spent a large part of his work time aboard the GRADY FAGAN, monitoring the crew's work. On the morning of November 28, 1985, Recar alleges that he was swinging from a CNG platform to the GRADY FAGAN when the rope broke, causing Recar to fall to the deck of the GRADY FAGAN and injure his neck.

*Recar*, 853 F.3d at 368. Like the plaintiff in *Recar*, Harding was injured in the course of his employment, which included performing maintenance work on a platform and pipeline in the OCS. Neither party disputes that the platform and pipeline are ostensibly connected to the exploration and production of oil and gas, nor do they dispute that Harding's role on October 17, 2024, was related to "removing hydrocarbons from the system and disconnecting the pipeline from the Main Pass 261A platform."[14] It is well settled that factual circumstances such as these indicate that the corresponding claim arose from an OCSLA situs. *See Hicks*, 308 F. Supp. 3d at 884–85 (reasoning that a similar set of facts indicated that the plaintiff's claim against the platform operator arose from an OCSLA situs).

---

[14] R. Doc. No. 80-1 ¶ 3.

Harding's only argument with respect to whether his claim against Transco arose from an OCSLA situs is that his injury occurred on the deck of the MELINDA B. ADAMS, and not while he was in the personnel basket "connected to the . . . platform."[15] This argument is unavailing. As this Court and others have found, tort actions resulting from personnel basket transfers "arise[] under OCSLA."[16] *See Hicks*, 308 F. Supp. 3d at 885 (collecting cases).

Furthermore, as the Fifth Circuit indicated in *Recar*, whether the plaintiff is physically connected to the fixed platform at the time his injury occurs is not outcome determinative. 853 F.3d at 369–70. As in *Recar*, Harding fell from an appurtenance physically connected to an OCS platform and was injured when he struck the vessel beneath him. Harding was only connected to the platform and in a position to fall and injure himself because of the work he was performing with respect to the Main Pass 261A platform. Accordingly, his claim against Transco arose from an OCSLA situs.

## B.    <u>Maritime law does not apply of its own force.</u>

Although Harding's claim against Transco arises under OCSLA, it is not necessarily governed by OCSLA. *See In re Deepwater Horizon*, 745 F.3d 157, 164 (5th Cir. 2014); *see also Recar*, 853 F.2d at 369 ("The district court may well have both admiralty jurisdiction under the general maritime law and federal question

---

[15] R. Doc. No. 80, at 8–9.

[16] Additionally, Harding's reliance on *Menard v. LLOG Exploration Co., LLC*, 259 F. Supp. 3d 475 (E.D. La. 2017) (Vance, J.), to argue that his claim against Transco does not arise from an OCSLA situs is misplaced. As this Court has previously explained, *Menard* does not analyze whether the plaintiff's claim arose pursuant to OCSLA. *See Hicks*, 308 F. Supp. 3d at 891 n.21.

jurisdiction by virtue of OCSLA . . . 'where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law.'"). For adjacent state law to apply as surrogate federal law, general maritime law "must not apply of its own force," and the adjacent state law must not be inconsistent with the applicable federal law. *Union Texas Petroleum*, 895 F.2d at 1047. As the parties do not challenge that Alabama tort law is inconsistent with federal law, the only question before the Court is whether general maritime law applies of its own force, "in other words, whether plaintiffs' tort claims sound in admiralty." *See Hicks*, 308 F. Supp. 3d at 886.

"To give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity." *Id.* (quoting *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999)). A claim may invoke a maritime situs through either "a tort occurring wholly on navigable water or . . . an injury suffered on land that was caused by a vessel on navigable water." *Delozier v. S2 Energy Operating, LLC*, 498 F. Supp. 3d 884, 890 (E.D. La. 2020) (Morgan, J.). For an incident to have a connection to traditional maritime activity, (1) the "general features" of the incident involved must have "a potentially disruptive impact on maritime commerce"; and (2) "'the general character' of the 'activity giving rise to the incident'" must "show[] a 'substantial relationship to traditional maritime activity.'" *Hicks*, 308 F. Supp. 3d at 887 (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). The second prong of the maritime connection requirement "is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such

activity is claimed to have been a proximate cause of the incident." *Grubart*, 513 U.S. at 541.

If the maritime situs requirement or either of the two prongs of the maritime connection requirement are not met, then the plaintiff's claims are not maritime in nature. *Cf. In re Katrina Canal Breaches Litig.*, 324 F. App'x 370, 377–80 (5th Cir. 2009) (per curiam) (concluding that, regardless of whether the tort occurred on a maritime situs or satisfied the first maritime connection prong, because the second maritime connection prong was not satisfied, the prerequisites for the district court's exercise of admiralty jurisdiction were not satisfied).

Harding asserts that his injury occurred on a vessel and thus occurred on a maritime situs. Additionally, he argues that his injury was predominantly caused by the negligence of the vessel's crew and captain, and therefore his claim against Transco is a "traditionally maritime tort."[17] However, even assuming *arguendo* that the incident causing Harding's injury arose on a maritime situs and that at least one of the alleged tortfeasors was engaged in an activity "substantially related to traditional maritime activity," *Grubart*, 513 U.S. at 541, Harding has not challenged Transco's assertion that his claim does not implicate a potentially disruptive impact on maritime commerce.

While the vessel crew's negligence may be sufficient to find that the second maritime connect prong is met, it does not tip the scales in Harding's favor with respect to the first prong. *Cf. Hicks*, 308 F. Supp. 3d at 891 & n.20 (explaining that

---

[17] R. Doc. No. 80, at 9, 11.

*Grubert*'s direction, that only the activity of one alleged tortfeasor need be substantially related to traditional maritime activity, only applies to the second prong of the maritime connection prerequisite). From a general description of the incident, "it is difficult to envision any potential effects to maritime commerce" caused by an injury to a pipeline worker during a personnel basket transfer between an offshore platform and a vessel, "and certainly no more than would arise from any crane activity near navigable water." *Solet v. CNG Producing Co.*, 908 F. Supp. 375, 378 (E.D. La. 1995) (Feldman, J.).

Harding's arguments with respect to the Admiralty Extension Act are similarly inapplicable. The Admiralty Extension Act provides an exception extending admiralty jurisdiction to "cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land," 46 U.S.C. § 30101(a). However, this extension is limited to torts caused by a vessel and its appurtenances. It does not extend to the negligence of a vessel's crew. *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 493 (5th Cir. 2002) (explaining that the exception "appl[ies] to the vessel and her appurtenances and does not include those performing actions for the vessel" (quotation omitted)).

Therefore, consistent with this Court's decision in *Hicks*, and other personnel basket transfer cases in this district, the Court finds that "an injury to a platform worker during a personnel basket transfer between an offshore platform and a vessel in navigable waters . . . does not fall 'within a class of incidents that pose[] more than a fanciful risk to commercial shipping.'" *Hicks*, 308 F. Supp. 3d at 890; *Mitchell v. B*

10

*& J Martin, Inc.*, No. 21-27, 2023 WL 12175358, at *2 (E.D. La. Feb. 3, 2023) (Ashe, J.); *see also Delozier*, 498 F. Supp. 3d at 892 ("Injuries sustained by workers during transfers between a fixed platform and a vessel in navigable waters have been held to be neither potentially disruptive to maritime commerce nor substantially related to traditional maritime activity.").

As previously stated, Harding does not argue that Alabama law is inconsistent with federal law, nor does he contest that a different state offers the appropriate surrogate federal law. Thus, he concedes these arguments to Transco.[18] *Cf. Strong v. B.P. Expl. & Prod., Inc.*, 440 F.3d 665, 668 (5th Cir. 2006) ("By not contesting Strong's arguments that (1) and (3) are satisfied, B.P. implicitly concedes that those conditions have been met. The sole issue is whether federal maritime law applies of its own force."). Therefore, the Court concludes that Alabama law, adopted as surrogate federal law pursuant to OCSLA, governs plaintiffs' tort claims against Transco. *Cf., e.g.*, *Newman v. KMJ Servs., Inc.*, No. 04-2518, 2006 WL 3469563, at *1 (E.D. La. Nov. 30, 2006) (Vance, J.) (applying Louisiana law where the plaintiff alleged that "he was injured when he fell from a personnel basket as he was being transferred from an oil platform located on the Outer Continental Shelf off of the coast of Louisiana to an adjacent supply ship"); *Solet*, 908 F. Supp. at 378 (finding that, based on allegations materially similar to those in the present case, the plaintiff's claims

---

[18] *See generally* R. Doc. No. 74-1, at 9–10 (providing authority for Transco's arguments that Alabama provides the law of the adjacent state, pursuant to OCSLA, and is not inconsistent with federal law).

11

against the platform owner were "properly governed by OCSLA" and, thus, Louisiana law).

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Transco's motion[19] for partial summary judgment is **GRANTED**. Alabama law provides the substantive body of law governing Harding's tort claims against Transco.

New Orleans, Louisiana, August 11, 2026.

 

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[19] R. Doc. No. 74.

12